Maurice M. Trowbridge, Plaintiff-Appellee, *v.* Chicago & Illinois Midland Railway Company, Defendant-Appellant.

(No. 69-133;

Third District—November 4, 1970.

ALLOY, J., specially concurring.

Hugh Graham, of Springfield, for appellant.

Hugh Talbert, of Granite City, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Defendant, Chicago & Illinois Midland Railway Company, has appealed from a judgment for $72,500 entered against it on the verdict of the jury in the Circuit Court of Peoria County in favor of Maurice Trowbridge, Plaintiff, in an action based on the FELA.

Plaintiff, age 41, was a part time seasonal employee for the defendant for twenty years. He was injured while working as an employee for defendant at approximately 1:30 P.M., on August 16, 1965, in Petersburg, Illinois.

Plaintiff was the acting foreman for two other employees of defendant, Jessie Byers and Gerald Lewis, who were engaged in cutting brush along the single track right of way near the Fifth Street crossing in Petersburg.

The procedure generally was to have Byers operate the gasoline engine McCullough rotary saw to cut the brush along the right of way. Lewis and the plaintiff would in turn follow Byers, pick up the newly cut brush and pile it in stacks at intervals along the right of way. Later the brush was burned.

The saw was a portable unit with the engine having a sling to strap over the shoulder of the operator. To the engine was connected an enclosed shaft of six feet in length to which was attached a nine inch rotary saw blade.

Trowbridge had operated various types of small power equipment, generally gasoline driven, such as rail saw, tamper, tie remover, track liner, chain saw and similar items. He had not operated this particular saw.

The tracks at the scene of the incident run generally from northwest to southeast, and about sixty yards southeast of the scene, Fifth Street crosses the tracks. At the time of the occurrence plaintiff and Byers, the crew member operating the saw, were working to the northeast of the track. Plaintiff was facing north standing on the ends of the crossties and Byers was eight or nine feet to the plaintiff's left with the saw strapped on. Byers was revving up the saw and advancing it toward the trunk of a tree of about two inches diameter which was five or six feet directly north of plaintiff on the edge of the slope. Plaintiff, holding onto the end of one of the branches of the tree with his right hand, saw out of the corner of his eye a car coming to the crossing. Thinking it to be Mr. Hicks, his immediate supervisor, he turned his head to the right momentarily to look and upon glancing back saw the tree had been cut through. Byers was taking off the saw and at the time plaintiff discovered his leg had been cut below the knee.

Plaintiff was hospitalized for a short time and was treated by physicians employed by defendant until the end of October, 1965. Trowbridge returned to work for defendant April 1, 1966.

According to the complaint and evidence several theories of negligence were advanced by plaintiff. They included the contention that the saw tended to jump and buck, that it did not include a safety guard, that plaintiff was not warned of the dangers incident to the use of the saw and that no safety meetings had been held for several years and use of the saw was not included in safety rules. Defendant contended on the other hand that plaintiff's injury was solely the result of his own inattention.

In seeking to reverse the judgment of the trial court defendant argues there were errors in rulings on instructions and evidence and also the judgment is excessive.

The principal controversy relating to instructions is whether IPI Instruction 160.02 as tendered by plaintiff and approved by the trial court over objection of defendant should have been given without modification. The instruction as given provided, "At the time of this occurrence there was in force a federal statute which provides that whenever an employee of a railroad is injured while engaged in the course of his employment, and the injury results in whole or in part from the negligence of any of the officers, agents or other employees of the railroad, then the railroad shall be liable in damages to the injured employee. Contributory negligence on the part of the injured employee shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee.". Defendant tendered an instruction in the language of 160.02 quoted as aforesaid but modified by the addition of the following language, "* * * If, however, you find from the evidence that the sole proximate cause of the injury was the negligence of the plaintiff, then the plaintiff shall not recover any damages from the defendant railroad.". Defendant also objected to another of plaintiff's given instructions (IPI 21.02, Burden of Proof) for the same reason namely the failure of the instruction to refer to plaintiff's contributory negligence as the sole proximate cause of his injury.

■■ As its initial premise, defendant relies on the general rule that each party is entitled to have the jury instructed on its theory of the case provided such theory finds support in the evidence. (*Wrighthouse v. Brown*, 52 Ill.App.2d 191, 201 N.E.2d 752, *Sims v. Chicago Transit Authority*, 7 Ill.App.2d 21, 115 N.E.2d 96, *Savage v. Blanchett*, 47 Ill.App.2d 355, 198 N.E.2d 120, *Hitt v. Langel*, 93 Ill.App.2d 386, 236 N.E.2d 118 and *Berg v. Collier*, 60 Ill.App.2d 145, 208 N.E.2d 353.) The foregoing cases cited by defendant illustrate and discuss the general rule but are of little assistance by way of analogy since the cases do not involve FELA actions or instruc-

tions relating to causation. We are in accord with the general view of such cases and the rule announced is basic to any consideration of whether or not a jury is properly instructed.

This brings us to defendant's more particular argument namely that it is entitled to have the uniform instruction (160.02) modified by adding the language indicating that defendant should be found not guilty if the evidence showed that the sole proximate cause of plaintiff's injury was his own negligence. In support of this argument defendant relies on *Rogers v. Missouri Pacific,* 352 U.S. 500, *Helton v. Thompson,* 311 Ill. App. 354, 36 N.E.2d 267, *Chicago St. P. & M. O. R. Co. v. Arnold,* 160 F.2d 1002 and *Ottley v. St. Louis, San Francisco Ry.,* 232 S.W.2d 966, S.C. Mo. and the comments of the drafters of the Illinois Pattern Instructions to IPI Instruction 160.02.

Any discussion of negligence or liability under the FELA necessarily includes ideas of causation. In *Rogers v. Missouri Pacific, supra,* cited by defendant, the court reviewed and reversed a Missouri State Court decision which set aside a jury verdict in favor of plaintiff employee. The main thrust of the *Rogers* opinion reflects a concern by the Court for the failure of trial courts to accept and approve the resolution of claims under the FELA by the jury. The opinion emphasizes that the determination of negligence, contributory negligence and causation in FELA cases is peculiarly a province of the jury and the trial court ought not to substitute its determination of causation for that of the jury. No question is raised in the *Roger's* case concerning the propriety of instructions.

In *Helton v. Thompson,* 311 Ill.App. 354, 36 N.E.2d 267 and *Ottley v. St. Louis, San Francisco Ry.* 232 S.W.2d 966, the court concludes that there was a complete absence of any evidence from which it could be inferred that the defendant employer was guilty of any negligence contributing to the employee's injury. In explaining its views on the absence of employer negligence the court postulates that the employee's injury was caused by his own fault and not by any conduct of employer. In neither of the aforementioned cases was the propriety of any "sole proximate cause" instruction involved. Nor does either opinion suggest either directly or by implication, that FELA provisions concerning contributory negligence are inadequate in the determination of causation.

The Court in *Chicago St. P. & M. O. R. Co. v. Arnold, supra,* was principally concerned with the question of whether an instruction relating to the timeliness of a warning given by the person in charge of the train had been properly refused, the court concluding that the instruction should have been given. The only reference to "sole proximate cause" in an instruction was the court's recitation of an issues instruction which included defendant's claim that plaintiff's negligence was the sole proximate cause

of his injury. The propriety of an "sole proximate cause" instruction was not an issue in the Arnold case and the discussion of causation by the court represents the view of the court regarding the duty of an employee to follow warnings when such warnings are required and given.

We do not believe that the general language of the foregoing cases can be extended to authorize or approve the giving of a sole proximate cause instruction. On the contrary *Page v. St. Louis Southwestern Railway Co.,* 349 F.2d 820, concludes that the introduction of such an issue is likely to be confusing and is not a distinct issue apart from the standard imposed by the FELA.

In the notes on Use regarding IPI 160.02 there appears the following on page 394, "* * * Where the contention is made and supported by evidence that the employee's negligence is the sole proximate cause of the accident, the instruction should be modified, since this is a defense to the action * * *." The foregoing recommendation is apparently based on the comment to IPI 160.02 which on page 395 states, "* * * If the negligence of an employee was the sole cause of his injury he may not recover. *Helton v. Thompson* (1st Dist. 1941), 311 Ill.App. 354, *cert.* denied 316 U.S. 688, 62 S.Ct. 1280, 86 L.Ed. 1760, reh. denied 317 U.S. 704, 63 S.Ct. 24, 87 L.Ed. 562 (1942); *Chicago, St. P. M. & O. R. Co. v. Arnold* (8th Cir. 1947), 160 F.2d 1002, 1006 ("instruction that if jury found plaintiff's negligence was the sole proximate cause of the injury, he could not recover, held proper * * *.")

■■ We are unable to agree with the recommendation that there are some circumstances in which IPI 160.02 ought to be modified by referring to defendant's non-liability if plaintiff's negligence was the sole proximate cause of his injury. IPI 160.02 is a summary of the statutory basis of liability specifically dealing with the negligence of the employer and the contributory negligence of the employee. The statute referred to does not include any reference to "sole proximate cause" and we are at a loss to understand how non statutory provisions can be properly incorporated into an instruction dealing with a statute.

The recommendation concerning when IPI 160.02 ought to be modified depends upon a distinction without a difference. In any case where the contention is made supported by evidence that plaintiff is guilty of contributory negligence it can be argued and usually is that plaintiff's injury was caused solely by his own contributory negligence. What appears to be an exception to a general rule is not in fact an exception and consequently the recommendation is unsatisfactory.

As indicated earlier in this opinion *Helton v. Thompson and Chicago, St. P. M. & O. R. Co., supra,* (cited in the IPI comment to 160.02) do not authorize or require the modification recommended. As observed in *Dowler*

*v. N.Y., Chi. and St. Louis R.R. Co.*, 5 Ill.2d 125, 125 N.E.2d 41, defendant employer's liability as set forth in the statute, depends on whether any negligence on its part contributed in whole or in part to the injury. The statutory instruction adequately provides for taking into account any negligence of the employee and includes without further specification the circumstance that the injury may be entirely his own fault.

Considering the other instructions which were given by both parties we believe that the jury was properly and adequately instructed and that no error was committed by the trial court in refusing defendant's modified instruction.

Defendant next argues the opinion evidence of Dr. Deyton that plaintiff was industrially unemployable was improperly admitted. After his injury plaintiff was treated by Dr. Denby in behalf of the defendant railroad. At the time of trial Denby was in the service and Dr. Lynch, an associate of Denby's, testified on behalf of defendant concerning his examination of plaintiff. Dr. Deyton likewise an examining physician, testified in behalf of plaintiff.

There is little dispute between the doctors concerning plaintiff's condition. The brush saw caused a gash in plaintiff's leg about six inches above the ankle severing several muscles which control the movement of plaintiff's toes. These muscles were not the main muscles of the leg. The severed muscles could not be repaired and it was agreed that the condition was permanent and could not be benefited by further medical attention. Minor nerves and minor parts of the vascular system and the area of the gash and its scar were also affected but there was no injury to the major nervous system or the major vascular system of the lower leg. There was some atrophy of plaintiff's leg below the scar. Both doctors agreed that the resulting condition referred to as "foot drop" caused the plaintiff to walk unnaturally and made more difficult tasks requiring foot dexterity. In addition the injury to the muscles reduced somewhat the ability of the plaintiff to move his foot inward or outward.

Dr. Deyton was a specialist in physical medicine and rehabilitation and a part of his specialty included the evaluation of disabilities. During the course of his testimony Deyton indicated that he believed the plaintiff to be industrially unemployable.

Defendant argues that the term "industrially unemployable" is too vague, is contrary to the evidence and is not based on witness's knowledge of employment opportunities in Chandlerville where plaintiff lived. We find no merit to such argument.

Deyton's opinion was based on facts personally known to him and the experience of his practice. (*Sherman v. City of Springfield*, 77 Ill.App.2d 195, 222 N.E.2d 62.) The doctors were in substantial agreement concern-

ing the nature and extent of plaintiff's disability and how such disability might affect plaintiff's work performance. They did disagree somewhat on the employability of plaintiff in industrial work. Deyton explained and limited the phrase industrial unemployability to mean that a person with a foot drop is a safety hazard, and as such would be rejected on a pre-employment physical for any type of work requiring a lot of ambulation and climbing such as railroad section hand and work in coal mines. See *Emerton v. Canal Barge,* 70 Ill.App.2d 49, 216 N.E.2d 457 and *Hollis v. Terminal Railroad Assoc. of St. Louis,* 72 Ill.App.2d 13, 218 N.E.2d 231.

■■ The fact that plaintiff returned to work for the railroad does not render Deyton's opinion inherently improbable or unbelievable. If the injury resulted in a reduction of employment opportunities or alternatives as may be reasonably inferred from Deyton's testimony, plaintiff's resumption of work with his previous employer is not conclusive on the issue. (*Wiles v. New York, Chicago and St. Louis Railroad Co.,* 283 F.2d 328.) Nor is such testimony excludable because of the witness's lack of knowledge of employment opportunities in Chandlerville. The testimony related generally to the ability of plaintiff to do certain kinds of work similar to that in which he had been previously engaged and that the testimony therefore does not depend on any knowledge of particular conditions in Chandlerville.

This brings us to defendant's last contention that the verdict was excessive. Plaintiff had worked for defendant as a laborer on a section gang for nearly twenty years but his work was seasonal. Usually plaintiff worked from April 1 through the end of October and then did not return to work until the following April when such work again became available. Plaintiff's earnings from the defendant railroad for several years prior to the year of his injury and for years thereafter prior to trial ranged from $2,000 to $3,800 per year. Additionally plaintiff earned from $1,000 to $2,000 per year from other work (working on farm and for brother). In the year of his injury plaintiff's estimated loss of earnings from August through October was $1,400 to $1,600. Total hospital and medical expenses paid by defendant employer was about $450.00.

■■ Defendant's contention that the award of $72,500 is excessive is based primarily on its insistence that the amount is exorbitant in view of the amount of the special damages. Although actual loss of earnings and out of pocket hospital and medical expenses are appropriately considered in determining damages no formula based thereon is appropriate or possible. We have heretofore discussed the effect of plaintiff's return to work for his employer and although plaintiff has, up till the time of trial, and for the time being sustained no future loss of earnings there is ample evidence that plaintiff has or will sustain substantial damage in this respect.

(See *Wiles v. New York, Chicago and St. Louis Railroad Co., supra, Blyzes v. Midwest Towing,* 109 Ill.App.2d 48, 248 N.E.2d 305 and *Parnham v. Carl W. Linder Co.,* 36 Ill.App.2d 224, 183 N.E.2d 744.) Whereas in the case at bar damages are primarily on a permanent injury the fact that medical and hospital expenses may be small is of no practical significance. (*Lau v. West Town Bus Co.,* 16 Ill.2d 63, 158 N.E.2d 63.) In our opinion the award is within the range of the evidence and ought not to be disturbed. *Gruenthal v. Long Island R.R. Company,* 393 U.S. 156, 89 S.Ct. 331.

For the foregoing reasons the judgment of the Circuit Court is affirmed.

Judgment affirmed.

RYAN, P.J., concurs.

Mr. JUSTICE ALLOY specially concurring:

I concur in the affirmance of the above case. I believe, however, that the determination with respect to the tendered instruction adding a modification of IPI 160.02 referred to in the majority opinion, should be based on the premise that the evidence in the cause did not support the submission of a "sole cause" modification of the instruction. I cannot agree with the commentary in the majority opinion which declares that in no case is it possible to justify the addition of the "sole proximate cause" clause to the instruction. While it is true that the clause contains a summary of the statutory basis for liability, there could be a circumstance where a determination by a jury could find that the negligence of the claimant was the sole proximate cause of the injury. While such modification would not be appropriate unless the record clearly justified its use, I do not believe it is consistent to state that IPI 160.02 should not in any circumstances be modified by a reference to non-liability of defendant if the plaintiff's negligence was the sole proximate cause of his injury.